## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **VERTEX SERVICES, INC.** | § | **CIVIL ACTION NO.** |
| | § | **4:17-cv-01527** |
| **VS.** | § | |
| | § | |
| **TETRA TECHNOLOGIES, INC., and** | § | |
| **TETRA APPLIED TECHNOLOGIES,** | § | |
| **LLC** | § | **JURY TRIAL REQUESTED** |

### DEFENDANTS' AMENDED MOTION TO DISMISS

Tetra Technologies, Inc. and Tetra Applied Technologies, LLC ("TETRA" or "Defendants") move to dismiss Plaintiff's suit as authorized by Rule 12(b)(6).

## I.  SUMMARY

Vertex Services, LLC ("Vertex" or "Plaintiff") asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* flowing from TETRA's alleged employment of unauthorized foreign workers on its vessels in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1182, 1324, 1327, and fraud and misuse of visas, 18 U.S.C. § 1546. TETRA seeks dismissal of Vertex's Complaint because:

- Vertex is barred from recovery because of its admitted substantive involvement in the alleged illegal hiring scheme.  Since Vertex admits that it located, trained, provided visas, and brought to this country the foreign workers, *all the while*

*believing that TETRA's manning exemptions were invalid*, Vertex's claim should be barred under the affirmative defense of *in pari delicto*.

- Vertex fails to properly plead the racketeering activities and the proximate cause of the injuries claimed; facts necessary to establish that TETRA is part of or participated in the operation of a RICO enterprise; facts supporting the existence of an association-in-fact enterprise; and an agreement which is required for conspiracy claims.

## II.  STANDARD OF REVIEW

A court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not provide fair notice of the claim and does not state factual allegations showing that the right to relief is plausible.[1]

## III.  AFFIRMATIVE DEFENSE OF *IN PARI DELICTO*

Justice demands dismissal of this lawsuit because Vertex's own allegations make clear that Vertex partnered with TETRA in the alleged illegal hiring scheme.

## A.    Vertex Bears Substantially Equal Responsibility

Under U.S. Supreme Court precedent, the affirmative defense of *in pari delicto* is available where, "as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress."[2]

---

[1]    Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007).

[2]    *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985).

2

Further, the Fifth Circuit has recognized the affirmative defense of "*in pari delicto* as a cognizable defense to a civil RICO claim":

> We do not think Congress intended RICO to facilitate "a wealth transfer among similarly situated conspirators"; indeed, countenancing such a "wealth transfer" would, perversely, reward conspirators with treble damages—and that hardly seems to further RICO's deterrence goals.[3]

The Fifth Circuit has also made clear that determination of the *in pari delicto* defense need not wait for further discovery or even trial:  "[A] complaint that shows relief to be barred by an affirmative defense . . . may be dismissed for a failure to state a cause of action."[4]  The Western District of Texas has specifically addressed the defense of *in pari delicto* and found that it may be determined on a motion to dismiss.[5]

## B.   Vertex Was an Active, Voluntary Participant in the Alleged Scheme

In order for *in pari delicto* to bar the Plaintiff's recovery, "[P]laintiff must be an active, voluntary participant in the unlawful activity that is subject of the suit."[6] Vertex's own admissions on the face of the Complaint demonstrate that Vertex was an active, voluntary participant in the alleged illegal hiring scheme:

---

[3]    *Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008).

[4]    *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[5]    *Brickley for CryptoMetrics, Inc. Creditors' Trust v. Scan Tech Identification Beams Sys., LLC.*, 566 B.R. 815 (Bankr. W.D. Tex. 2017).

[6]    *Pinter v. Dahl*, 486 U.S. 622, 636 (1988).

3

- "TETRA relies on offshore personnel companies like [Vertex] to locate, train, and provide foreign labor to be used on its vessels."  Pl.'s Orig. Compl. at ¶ 4.13.

- "Vertex continually questioned the exemption that had been granted by the Coast Guard, and informed TETRA on countless occasions that American labor existed that could fill these positions." Pl.'s Orig. Compl. at ¶ 3.23.

- "Vertex obtains workers from Blue Marine/Sea Cross Marine PTE [the alleged RICO enterprise] which were then used by TETRA on an ongoing basis."  Pl.'s Orig. Compl. at ¶ 4.13.

- "All of Vertex's personnel are trained to the guidelines of the client and have multiple years of experience on the job."  Pl.'s Orig. Compl. at ¶ 3.4.

- "Vertex also provides foreign labor with B-1 OCS visas when a company has received a U.S. Coast Guard exemption regarding foreign personnel."  Pl.'s Orig. Compl. at ¶ 3.4.

- "When a worker from Blue Marine/Sea Cross Marine PTE was brought to the United States by Vertex, that worker was then used by TETRA and placed on one of TETRA's offshore barges."  Pl.'s Orig. Compl. at ¶¶ 4.13, 4.17.

Vertex claims that the alleged immigration violations caused it harm.  Pl.'s Orig. Compl. at ¶ 4.43.  Vertex, however, comes to the Court with unclean hands. Through its direct actions, as alleged in its Complaint, Vertex bears at least substantially equal responsibility for the alleged immigration violations if this Court determines, contrary to Fifth Circuit precedent,  that the U.S. Coast Guard manning exemptions were invalid.[7]  Vertex alleges throughout its Complaint that sufficient American labor was available to work on TETRA's barges, but that

TETRA continued to obtain vessel manning exemptions.  Pl.'s Orig. Compl. at ¶¶ 3.18, 3.20, 3.22, 3.23, 3.25, 3.27.   Despite believing this to be true, Vertex continued to actively participate in what it considered an "illegal hiring scheme" by providing foreign workers to TETRA.   Vertex even renewed its contract with TETRA in 2014 and increased the cost of foreign labor.  Pl.'s Orig. Compl. at ¶ 3.18.

Clearly, Vertex was content with the alleged illegal hiring scheme so long as it was profitable for Vertex.  Only when TETRA ended its relationship with Vertex at the end of 2015 did Vertex determine that it was damaged by the alleged illegal hiring scheme and file this lawsuit.  Filing this lawsuit, however, does not absolve Vertex of its own wrongdoing.   Since Vertex admits that it located, trained, provided visas, and brought to this country the foreign workers, *all the while believing that TETRA's manning exemptions were invalid*, Vertex's claim should be barred under the affirmative defense of *in pari delicto*.

### IV.  FAILURE TO ALLEGE THE NECESSARY ELEMENTS

RICO creates a civil cause of action in favor of "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."[8]  A RICO claim must be pleaded with specific facts, not mere conclusions or broad, general

---

[7]  *Brown v. Offshore Specialty Fabricators, Inc.,* 663 F.3d 759, 766 (5th Cir. 2011) ("We are loath to second-guess the Coast Guard's judgment . . . .").

5

allegations.[9]  "[A] plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[10]  Vertex has failed to satisfy a number of these requirements.

**A.**  **Failure of Racketeering Activity:  Vertex fails to sufficiently plead the allegations concerning racketeering activity and proximate cause.**

To establish liability under RICO, Vertex must first allege TETRA committed two or more of the offenses enumerated in 18 U.S.C. § 1961.[11]  Here, Vertex accuses TETRA of violating several on that list:  (1) INA section 274 relating to bringing in and harboring certain aliens, (2) INA section 277 relating to aiding or assisting certain aliens to enter the U.S., and (3) 18 U.S.C. § 1546(a) relating to fraud and misuse of visas, permits and other documents.

**1.**  **INA violations cannot serve as RICO predicate acts when the foreign laborers at issue worked aboard vessels.**

Although violations of the INA can ordinarily serve as predicate acts in support of RICO claims, the INA is not applicable to employment of workers on vessels floating on the waters of the Outer Continental Shelf ("OCS").[12]  As such,

---

[8]  18 U.S.C. § 1964(c); *see also Beck v. Prupis*, 529 U.S. 494 (2000); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d. 425 (5th Cir. 2000).

[9]  *Montesano v. Seafirst Comm. Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).

[10]  *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (5th Cir. 2010) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

[11]  *Marriott Brothers v. Cage*, 911 F.2d 1105 (5th Cir. 1990) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)).

[12]  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 765 (5th Cir. 2011).

6

the INA violations referenced in Vertex's Complaint cannot serve as RICO predicate acts in this case as a matter of law.

Vertex alleges that "TETRA illegally hires overseas workers to work on their *vessels* in order to save money." Pl.'s Orig. Compl. at ¶ 3.4 (emphasis added). Vertex addresses foreign labor hired to work on the following TETRA vessels: *TETRA Hedron*, *Arapaho*, and *DB-1*. Pl.'s Orig. Compl. at ¶ 3.3. Vertex maintains that TETRA illegally obtained exemptions from vessel manning requirements to employ non-U.S. citizens or permanent resident aliens aboard these three vessels working in the Gulf of Mexico. Pl.'s Orig. Compl. at ¶ 3.29. As a result, Vertex alleges multiple violations of the INA.[13]

Violations of the INA, however, cannot constitute RICO predicate acts on the present facts because the INA does not apply to vessels on the OCS. The Fifth Circuit has addressed this precise issue in *Brown v. Offshore Specialty Fabricators, Inc.*,[14] in a lawsuit involving very similar circumstances filed by Vertex's counsel in this lawsuit. In *Brown*, U.S. workers alleged RICO claims against the "Service Defendants" companies engaged in the offshore oil and gas exploration industry. As a RICO predicate act, the *Brown* plaintiffs alleged that the Service Defendants unlawfully obtained exemptions from vessel manning requirements, thereby violating the INA by employing foreign workers on their vessels.

The *Brown* court made clear that Service Defendants' vessels were not Outer Continental Shelf Land Act ("OCSLA") situses to which the INA applies.   It explained that the INA, through its own terms, applies only to the U.S. and its territories.[15]   It further explained that the INA also applies to the OCS, but only though the OCSLA.[16]   The Court wrote:

> The plaintiffs concede that the Service Defendants' vessels are free floating, and are neither permanently nor temporarily attached to or erected on the seabed.   The OCSLA does not, therefore, extend the reach of United States law, including the INA, to the Service Defendants' vessels.   The plaintiffs cite no authority for their theory that the INA, once triggered by workers stepping foot on U.S. soil, remains effective forever, and we are unpersuaded by such argument. We hold that the Service Defendants do not violate RICO because the law that would make their conduct racketeering activity—the INA— does not apply in the place where that conduct occurred, namely vessels floating on the waters of the Outer Continental Shelf.[17]

Here, because the foreign workers at issue were destined to work, eat, and sleep on TETRA's free-floating vessels, the *TETRA Hedron*, *Arapaho*, and *DB-1*, the OCSLA does not extend the reach of the INA to such vessels.   And because TETRA could not have violated the INA with regard to the foreign workers, no predicate acts stemming from the INA exist to support Vertex's RICO claim.

---

[13]   The INA violations are set out at page 9, *infra*.
[14]   663 F.3d 759 (5th Cir. 2011).
[15]   *Id*. at 764.
[16]   *Id*.
[17]   *Id*. at 765.

### 2.      Alternatively, the INA violations are not pleaded sufficiently.

Even if the INA applied to TETRA's vessels, Vertex failed to sufficiently

plead facts supporting the alleged violations.  Vertex alleges multiple violations of

the INA, including violations of:

| INA § | Codification at 8 U.S.C. § | Description | Pl.'s Orig. Compl. |
|---|---|---|---|
| 274(a)(1)(A)(ii) | 1324(a)(1)(A)(ii) | Knowingly transporting illegal aliens | ¶ 4.20 |
| 274(a)(1)(A)(iii) | 1324(a)(1)(A)(iii) | Knowingly harboring or concealing illegal aliens | ¶ 4.8 |
| 274(a)(1)(A)(iv) | 1324(a)(1)(A)(iv) | Knowingly inducing aliens to illegally enter U.S. | ¶ 4.21 |
| 274(a)(1)(A)(v) | 1324(a)(1)(A)(v) | Conspiracy to commit §§ (a)(1)(A)(i)-(iv) | ¶ 4.22 |
| 274(a)(3)(A) | 1324(a)(3)(A) | Prohibiting the knowing employment of illegal aliens | ¶ 4.8 |
| 277 | 1327 | Assisting inadmissible aliens in entering U.S. | ¶¶ 4.26, 4.27, 4.28 |

#### a.      INA § 274(a)(1)(A)(ii) violation not pleaded sufficiently.

Vertex alleges in a wholly conclusory manner that TETRA committed a

racketeering activity by transporting an illegal alien within the U.S.:

> The Defendants violated Section 274(a)(1)(A)(ii) of the [INA] by knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transported, or moved or attempted to transport or move such alien within the United States by means of transportation or otherwise.

Pl.'s Orig. Compl. at ¶ 4.20.  Section 274(a)(1)(A)(ii) of the INA provides:

> Any person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law . . . shall be punished . . . .

To show a violation of this statute, Vertex must prove that (1) TETRA transported an alien within U.S., (2) that the alien was in the U.S. in violation of the law, (3) that such fact was known to TETRA, and (4) that TETRA acted willfully in furtherance of the alien's violation of the law.[18]

Vertex, however, wholly fails to allege that TETRA transported, moved, or attempted to transport or move the foreign workers at issue within the U.S. Vertex alleges paragraph after paragraph regarding TETRA's procurement of the foreign labor to work on its vessels, but never once does it talk about how the foreign laborers were transported within the U.S. As a result, the Court must dismiss any RICO claim stemming from a violation of this statute.

### b.    *INA § 274(a)(1)(A)(iv) violation not pleaded sufficiently.*

Vertex alleges, again in a conclusory manner, that TETRA committed a racketeering activity by knowingly inducing aliens to illegally enter the U.S.:

> The Defendants violated Section 274(a)(1)(A)(iv) of the [INA] by encouraging or inducing an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law.

---

[18]    *United States v. Hernandez*, 913 F.2d 568, 569 (8th Cir. 1990).

10

Pl.'s Orig. Compl. at ¶ 4.21.  Section 274(a)(1)(A)(iv) of the INA provides:

> Any person who . . . encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . . shall be punished . . . .

The Fifth Circuit, following the lead of the Eleventh Circuit, has held that to show a violation of this statute, Vertex must prove that (1) TETRA encouraged or induced, (2) an alien, (3) to come to, enter, or reside in the U.S., and (4) knowing or in reckless disregard that the alien's coming to, entering, or residing in the U.S. is illegal.[19]

Vertex, however, makes no allegations that TETRA *encouraged or induced* the foreign workers to come to, enter, or reside in the U.S.  Indeed, Vertex's only relevant allegations are that TETRA employed the foreign laborers in the U.S.

The Eleventh Circuit has recognized that mere employment is not proof enough that the defendant *encouraged* or *induced* the illegal alien to come to, enter, or reside in the U.S.[20]  Where the plaintiff "alleged that the defendants had knowingly supplied the aliens with jobs <u>and</u> with social security numbers to facilitate their employment," the Eleventh Circuit held that the plaintiff properly

---

[19]     *U.S. v. Pena*, 418 Fed. Appx. 335, 341 (5th Cir. 2011) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1294 (11th Cir. 2010)).

[20]     *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1295-97 (11th Cir. 2010).

11

pleaded a predicate act based on INA section 274(a)(1)(A)(iv).[21]   It noted, however, that the critical fact was the employer-supplied social security numbers.[22] Here, Vertex has pleaded no such additional fact, other than employment, to support a violation of this section.

### c.    INA § 274(a)(1)(A)(v) violation not pleaded sufficiently.

Once again, Vertex alleges in a conclusory manner that TETRA committed a racketeering activity by conspiring to commit other sections of the INA:

> The Defendants violated Section 274(a)(1)(A)(v) of the [INA] by conspiring to commit the violations listed in Paragraphs 4.20 and 4.21.

> The Defendants participated in a plan, scheme or artifice to defraud Vertex, and with the intent to knowingly hire foreign workers, violated multiple provisions of the INA.

Pl.'s Orig. Compl. at ¶¶ 4.22, 4.23.  Section 274(a)(1)(A)(v) of the INA provides:

> Any person who . . . engages in any conspiracy to commit any of the preceding acts [listed in sections 1324(a)(1)(A)(i)-(iv)] . . . shall be punished . . . .

To show a violation of this statute, Vertex must prove that (1) TETRA and at least one other person made an agreement to commit the crimes described for the purpose of commercial advantage or private financial gain; (2) TETRA knew the

---

[21]    *Id*. at 1295 (emphasis added).
[22]    *Id*. at 1297.

unlawful purpose of the agreement; and (3) TETRA joined in the agreement willfully.[23]

Vertex, however, makes no such allegation regarding an agreement between TETRA and another person to commit the INA violations of knowingly transporting illegal aliens under section 1324(a)(1)(A)(ii) or knowingly inducing aliens to illegally enter the U.S. under section 1324(a)(1)(A)(iv).  Vertex mentions no such agreement between TETRA and Blue Marine/Sea Cross Marine PTE, the alleged criminal enterprise (Pl.'s Orig. Compl. at ¶¶ 4.13 to 4.16), nor TETRA and the foreign workers, the alleged association in fact enterprise (Pl.'s Orig. Compl. at ¶¶ 4.17, 4.19).  Indeed, the only agreement even hinted at is the one between Vertex and TETRA—the agreement that Vertex will provide foreign workers to TETRA to work on vessels offshore.  "The mere use of the word[] 'conspiracy' . . . without any more explanation of the grounds of the plaintiffs' entitlement to relief is insufficient."[24]  As a result, it is clear that Vertex's allegations regarding conspiracy under the INA do not state a predicate act.

### d.      INA § 274(a)(3)(A) violation not pleaded sufficiently.

Vertex alleges that TETRA committed a racketeering activity by violating INA § 274(a)(3)(A) which makes it a federal crime for any person to "knowingly

---

[23]   *U.S. v. Lopez-Cabrera*, 617 Fed. Appx. 332, 336 (5th Cir. 2015).

[24]   *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

hire[] for employment at least 10 individuals with actual knowledge that the individuals are aliens" during a twelve-month period.  The term "alien" refers to (1) an "unauthorized alien," meaning, "with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General"[25] who (2) "has been brought into the United States in violation of INA § 274(a)]."[26]

Vertex has wholly failed to plead the necessary facts to establish a plausible claim under this section.  Indeed, Vertex's only conclusory statement regarding violation of this statute is:

> The Illegal Worker Hiring Scheme violates two provisions of Section 274 of the [INA], specifically 8 U.S.C. § 1324(a)(1)(A)(iii) (knowingly harboring or concealing illegal aliens), and 8 U.S.C. § 1324(a)(3)(A) (prohibiting the knowing employment of illegal aliens).

Vertex does not even attempt to recite the elements necessary for such a violation.

Further, Vertex fails to provide any dates whatsoever to support such a violation.  Vertex provides general dates for a variety of events, but none which might identify a twelve-month period where TETRA hired at least ten aliens:

| Alleged Date | Alleged Event | Pl.'s Orig. Compl. |
|---|---|---|
| 2009 | Vertex began providing offshore laborers to TETRA | ¶ 3.4 |

---

[25]    8 U.S.C. § 1324a(h)(3).
[26]    8 U.S.C. § 1324(a)(3)(B)(ii).

| Aug. 2011 | TETRA purchased the *TETRA Hedron* | ¶ 3.13 |
|---|---|---|
| Late 2012 | TETRA's exemption expired for the DB-1 | ¶ 3.16 |
| 2013 | TETRA allegedly re-assigned "multiple welders" from the *TETRA Hedron* to the *DB-1* | ¶ 3.16 |
| Since 2014 | Foreign workers arrived each year before American employees were re-hired | ¶ 3.19 |
| Jan. 2014 | Vertex renewed the personnel contract with TETRA | ¶ 3.18 |
| Feb. 2014 | TETRA sold the *DB-1* | ¶ 3.17 |
| May 2014 | Foreign workers provided by Vertex unable to work on the *TETRA Hedron* due to compliance issues | ¶ 3.20 |
| June 2014 | TETRA leased the *DB-1* from TOPPS | ¶ 3.22 |
| June 18, 2014 | TETRA  notified Vertex that $75,000 would be withheld from Vertex to pay for the temporary C&G-provided American workers | ¶ 3.21 |
| June 20, 2014 | TETRA applied for an exemption for the *DB-1* | ¶ 3.22 |
| Middle/end of 2015 | TETRA approached Vertex regarding a cost reduction of foreign labor | ¶ 3.23 |
| Aug. 2015 | TETRA was terminated from the project the *Arapaho* was working on | ¶ 3.24 |
| Dec. 2015 | Vertex informed TETRA that it could provide American personnel to fulfill TETRA's labor needs on the *TETRA Hedron* | ¶ 3.27 |
| Beginning of 2016 | TETRA continued to use foreign laborers on board the *TETRA Hedron* | ¶ 3.27 |
| March or May 23, 2017 | TETRA created a new job listing on the Louisiana Workforce Commission website | ¶ 3.29 |

In addition, Vertex fails to allege facts proving that the foreign workers at issue were "aliens" as defined by the statute.  Namely, Vertex does not identify the definition of "alien" under the statute or make any allegations regarding whether the foreign workers were lawfully admitted for permanent residence or authorized for employment by the Attorney General.[27]

---

[27]     8 U.S.C. § 1324a(h)(3).

### e.   *INA § 277 violation not pleaded sufficiently.*

Vertex alleges that TETRA has violated yet another section of the INA by

knowingly aiding or assisting inadmissible aliens to enter the U.S.:

> The Defendants have violated Section 277 of the [INA] by knowingly aiding or assisting aliens inadmissible under Section 212(a)(3) of the [INA] to enter the United States.
>
> The foreign workers are inadmissible under Section 212(a)(3) because the foreign labor exemption granted to TETRA was improper, meaning the presence of the foreign workers in the United States violates Section 212(a)(3)(A)(ii).
>
> The Defendants have violated Section 277 of the [INA] by conniving or conspiring to allow, procure, or permit any such alien whose presence in the United States violates Section 212(a)(3) to enter the United States.

Pl.'s Orig. Compl. at ¶¶ 4.26, 4.27.  Section 277 states:

> Any person who knowingly aids or assists any alien inadmissible under section . . . 1182(a)(3) (other than subparagraph (E) thereof) of this title to enter the United States, or who connives or conspires with any person or persons to allow, procure, or permit any such alien to enter the United States, shall be fined . . . or imprisoned . . . or both."

The statute clarifies that the alien must be inadmissible under section 212(a)(3) of

the INA (codified at 8 U.S.C. § 1182(a)(3)).  That section states:

> Any alien who a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in (i) any activity (I) to violate any law of the United States relating to espionage or sabotage or (II) to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information, (ii) any other unlawful activity, or (iii) any activity a purpose of which is the opposition to, or the control or overthrow of, the Government of the

16

United States by force, violence, or other unlawful means, is inadmissible.

Vertex, however, has wholly failed to plead a set of facts which would make TETRA liable for this racketeering activity. Vertex makes no allegation regarding the knowledge or reasonable belief of a consular officer or the Attorney General with regard to the foreign laborers in question. As a result, Vertex's RICO claim arising from this statute fails to state a claim upon which relief can be granted.

### 3. The 18 U.S.C. § 1546(a) violation is not pleaded sufficiently.

Other than the alleged violations of the INA discussed above, Vertex asserts only one other RICO predicate act against TETRA—18 U.S.C. § 1546(a) generally prohibiting the possession of visas, permits, and other documents known to be fraudulently procured. The relevant portion of section 1546(a) provides:

> Whoever . . . possesses . . . any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . . [s]hall be fined or imprisoned . . . .

Vertex alleges that TETRA's "possession of any exemption granted by the U.S. Coast Guard violated 18 U.S.C. § 1546." Pl.'s Orig. Compl. at ¶ 4.34. The relevant question, then, is whether or not a vessel manning exemption fits the

meaning of "other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States."

First, no reported decision addresses whether a vessel manning exemption is a "document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States."  Thus, this issue may be a matter of first impression for this or any other court.

Second, looking at the language used in section 1546(a), it is clear that the vessel manning exemption, if considered an "other document," must provide for entry into the U.S. or serve as evidence of authorized stay or employment in the U.S..  A vessel manning exemption granted to TETRA, however, would not allow a foreign worker entry into the U.S., nor would it serve as evidence of authorized stay or employment in the U.S.  Instead, Vertex's own Complaint explains that Vertex—not TETRA—was the entity that used the vessel manning exemptions to obtain the B-1 OCS visas for the foreign workers.  Pl.'s Orig. Compl. at ¶ 3.4.  It is the work visa obtained by Vertex that a foreign worker would use to enter the country, and it is the work visa obtained by Vertex that a foreign worker would use to prove justify his authorized stay or employment in the U.S.

### 4. Vertex fails to properly plead a causal connection between the alleged predicate acts and the injuries claimed.

Apart from failing to plead adequately their predicate acts, Vertex also fails to allege a causal connection between those acts and the injuries claimed.  "RICO

affords a private right of action only to a plaintiff who can show that he or she has been injured *by reason of* a violation of RICO's criminal prohibitions."[28]   Hence, "[t]he Supreme Court requires plaintiffs to establish both but-for cause and proximate cause in order to show injury by reason of a RICO violation."[29]   As to the latter element, "[p]roximate cause should be evaluated in light of its common-law foundations [and] . . . requires some *direct relation* between the injury asserted and the injurious conduct alleged."[30]   Even at the pleading stage, "[w]hen a court evaluates a RICO claim for proximate cause, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."[31]   A court must dismiss a RICO claim if it "rest[s] on an overly attenuated chain of inferences."[32]

In *Anza*, the Supreme Court addressed the proper RICO proximate-cause standard at the motion-to-dismiss stage.[33]   The plaintiff sued its business competitor for conducting a RICO enterprise that defrauded the New York tax authority, allowing the defendant to lower prices below market rates and attract

---

[28]   *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (emphasis added) (internal citations and quotation marks omitted).

[29]   *Id.* (internal citations and quotation marks omitted).

[30]   *Id.* (emphasis added) (internal citations and quotation marks omitted).

[31]   *Id.* (internal citation omitted).

[32]   *Zervas v. Faulkner*, 861 F.2d 823, 837 (5th Cir. 1988); *see also Hemi Group*, 503 U.S. at 9 (holding that if the "link" between the alleged injury and the predicate acts "is too remote, purely contingent, or indirect," the RICO claim should be dismissed).

[33]   *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).

19

customers away from the plaintiff.[34]  Because the plaintiff's harm arose from "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)," the Court held that the RICO claims could not survive the defendant's motion to dismiss.[35]  Examining the RICO standing requirement's "underlying premises," the Court first noted "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action."[36]  The defendant's actions (lowering prices) could be attributed to "any number of reasons unconnected to the asserted pattern of fraud," and the plaintiff's harm (lost sales) "could have resulted from factors other than" the defendant's lower prices.[37]  The Court also held that the "speculative nature of the proceedings that would follow if [the plaintiff] were permitted to maintain its claim"—specifically, the "intricate, uncertain inquir[y]" required to calculate damages—required dismissal of the RICO claims.[38]

Here, Vertex accuses TETRA of violations of the INA.  It claims that these RICO predicate acts resulted in Vertex's loss of profits and inability to grow the business.  Like in *Anza*, Vertex's causation theory is too attenuated to establish RICO standing.  The Complaint fails to present facts demonstrating that Vertex's

---

[34]     *Id.* at 454.
[35]     *Id.* at 458.
[36]     *Id.*
[37]     *Id.* at 458-59.
[38]     *Id.* at 459-60.

harm is directly attributable to TETRA's alleged RICO violations, rather than to other unrelated factors.  While most of the 21-page Original Complaint focuses on allegations regarding TETRA's predicate acts, only three paragraphs directly describe Vertex's theory of causation:

> 3.3     Through a complex and illegal scheme, TETRA illegally hires overseas workers to work on their vessels in order to save money. This ongoing depression of wages by TETRA results in the loss of benefits to American citizens and aliens lawfully admitted to the United States for permanent residence.  It also limited the amount that TETRA paid its labor providers since overseas workers were significantly cheaper to use than their American counterparts.
>
> . . .
>
> 3.30   Vertex has suffered harm in the amount of depressed profits and an inability to grow the business.
>
> . . .
>
> 4.43   Vertex has been proximately harmed by the racketeering activity by being paid depressed wages by TETRA.

Pl.'s Orig. Compl. at ¶¶ 3.3, 3.30, 4.43.  To establish RICO standing, Vertex thus alleges that TETRA's RICO violations permitted TETRA to reduce payments to Vertex because foreign labor was significantly cheaper than American labor. Vertex's theory is wrought with fatal pleading deficiencies.

First, Vertex fails to allege any facts showing how TETRA's choice of foreign, rather than American, labor had any effect on Vertex's business.  Vertex does not allege that it was deprived of a higher profit from providing foreign

workers.   Instead, Vertex alleges that even though it knew that TETRA's exemptions were allegedly unlawful,  Vertex renewed its contract with TETRA and raised its rates for supplying foreign labor.  Pl.'s Orig. Compl. at ¶ 3.18.

Second, Vertex does not allege that if TETRA had obtained American, rather than foreign, labor, it would have sourced the American labor from Vertex. Indeed, Vertex's own Complaint alleges that TETRA often obtained American labor from other personnel sourcing companies.  Pl.'s Orig. Compl. at ¶ 3.20.

Vertex's bare and conclusory allegations are insufficient to demonstrate that Vertex's supposed depressed profits and inability to grow the business were attributable to TETRA's purported RICO violations.

**B.**   **Failure of Enterprise:  The enterprise claimed by Vertex fails for lack of the purpose, relationships, and longevity required by law.**

To bring a RICO claim against TETRA, Vertex must allege TETRA was employed by or associated with an "enterprise" and that TETRA conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.[39]  To satisfy this standard, Vertex must do more than simply allege that TETRA generally committed certain predicate acts of racketeering.  The Supreme Court has made clear:

> The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it

---

[39]    18 U.S.C. § 1962(c).

engages. The existence of an enterprise at all times remains a
separate element which must be proved . . . .[40]

Vertex has named Blue Marine/Sea Cross Marine PTE as the RICO enterprise
through whom TETRA committed its alleged racketeering activities. Pl.'s Orig.
Compl. at ¶ 4.13.

### 1. Vertex fails to properly allege that TETRA is associated with a RICO enterprise.

"To avoid dismissal for failure to state a claim, a plaintiff must articulate
how each defendant acquired or maintained an interest in an enterprise, or acquired
control of an enterprise, by means of a racketeering activity."[41]   This means
pleading specific facts regarding (1) specific racketeering activities committed by
TETRA, and (2) the alleged enterprise itself.  Vertex has not done so in this case
relative to TETRA and Blue Marine/Sea Cross Marine PTE.

Vertex's Complaint fails to allege a relationship between TETRA and the
RICO enterprise, Blue Marine/Sea Cross Marine PTE.  In fact, its Complaint states
that "*Vertex* obtains workers from Blue Marine/Sea Cross Marine PTE" and that
*Vertex* brought the workers to the U.S.  Pl.'s Orig. Compl. at ¶ 4.13 (emphasis
added).  At no point does Vertex's Original Complaint allege that TETRA had any
relationship with Blue Marine/Sea Cross Marine PTE.  It correctly states that
Vertex obtained the foreign workers from Blue Marine/Sea Cross Marine PTE and

---

[40]     *U.S. v. Turkette*, 452 U.S. 576, 583 (1981).

then Vertex provided them to TETRA.  Pl.'s Orig. Compl. at ¶ 4.13.  A graphical depiction better illustrates the relationship:

| **Blue Marine/Sea Cross Marine PTE  →  Vertex  →  TETRA** |
| --- |

Although Vertex makes the conclusory allegation that TETRA used Blue Marine/Sea Cross Marine PTE to further its unlawful scheme of knowingly harboring and employing illegal immigrants (Pl.'s Orig. Compl. at ¶ 4.16), Vertex acknowledges that it was Vertex, not TETRA, who located, trained, and provided the foreign workers (Pl.'s Orig. Compl. at ¶ 4.13).  Vertex wholly fails to allege facts that would show a relationship connection between TETRA and the alleged "enterprise."  Thus, Vertex has not pleaded sufficiently that TETRA is "employed by" or "associated with" the alleged enterprise.

## 2. Vertex fails to plead any facts supporting participation by TETRA in the operation or management of the "enterprise."

Vertex also fails to plead facts establishing that TETRA conducted or participated in the affairs of a RICO "enterprise."  The U.S. Supreme Court has explained that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" means that "one must participate in the operation or management of the enterprise itself."[42]  Indeed, the Fifth Circuit has recognized that the plaintiff must allege that the defendant has directed some part of the

---

[41]     *Cadle Co. v. Schultz*, 779 F. Supp. 392, 397 (N.D. Tex. 1991).

24

enterprise's affairs.[43]   In most cases, "a defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s conduct or participate requirement."[44]

Vertex, however, fails to allege facts that demonstrate TETRA "operated" or "managed" Blue Marine/Sea Cross Marine PTE.  It only alleges that TETRA received foreign workers from Vertex who received them from the alleged RICO enterprise—Blue Marine/Sea Cross Marine PTE.  Even if Vertex is attempting to allege a business relationship between TETRA and Blue Marine/Sea Cross Marine PTE, "merely having a business relationship with a RICO enterprise" is not enough to satisfy the supervisory requirement.[45]

Additionally, "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."[46] Vertex offers no factual allegations that TETRA provided any management or directing of Blue Marine/Sea Cross Marine PTE's affairs; instead, Vertex offers only allegations of how TETRA directed TETRA's own affairs.

---

[42]   *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).
[43]   *United States v. Rosenthal*, 805 F.3d 523, 532 (5th Cir. 2015) (emphasis added) (citing *Reves*, 507 U.S. at 179).
[44]   *Allstate Ins. Co. v. Benhamou*, 190 F. Supp.3d 631, 655 (S.D. Tex. 2016) (citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)).
[45]   *Id.*
[46]   *Reves*, 507 U.S. at 179.

### 3. Vertex fails to plead any facts supporting the existence of an association-in-fact enterprise with the foreign workers.

Vertex also alleges that TETRA committed its racketeering activities through its association-in-fact enterprise—specifically, the foreign workers it obtained through the "illegal worker hiring scheme." Courts agree that "[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise."[47]

For an alleged association-in-fact enterprise, a plaintiff must show: "(1) an existence separate and apart from the pattern of racketeering; (2) an ongoing organization; and (3) members must function as a continuing unit as shown by a hierarchical or consensual decision making structure."[48] Plaintiff's Complaint does not meet these pleading requirements and therefore fails to state a viable RICO enterprise claim under 18 U.S.C. § 1962(c).

### a. The foreign worker association-in-fact enterprise has no existence apart from alleged racketeering activity.

First, Vertex fails to plead the existence or purpose of the foreign workers separate and apart from the alleged pattern of racketeering. To survive a motion to

---

[47]   *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *see also Montesano v. Seafirst Comm. Corp.*, 818 F.2d 423 (5th Cir. 1987).

[48]   *Benhamou*, 190 F.Supp.3d at 652 (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988), *cert. denied*, 489 U.S. 1089 (1989); *see also Plambeck*, 802 F.3d at 673 (citing *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991).

dismiss, a plaintiff must plead facts showing that the association-in-fact exists independently of its goal to simply commit the predicate acts.[49]

Here, Vertex alleges that it brought the foreign workers to the U.S. to work on TETRA's offshore barges.  Pl.'s Orig. Compl. at ¶ 4.17.  But it states that the foreign workers are here illegally because TETRA obtained the vessel manning exemptions illegally.  Pl.'s Orig. Compl. at ¶ 4.17.  Vertex's Complaint offers no other factual allegations regarding the existence of the foreign workers apart from their role in the alleged illegal hiring scheme.  Since Vertex has not pleaded specific facts establishing the existence of the association-in-fact enterprise apart from the alleged illegal hiring scheme, it has failed to establish the foreign workers as an association-in-fact enterprise.

### b.    *The foreign worker association-in-fact enterprise has no ongoing organization with continuity and structure.*

Second, Vertex fails to allege that the foreign workers are an ongoing organization with continuity and structure.  The Fifth Circuit has explained that "[c]ontinuity or the ongoing nature of an association-in-fact is the linchpin of

---

[49]    *Walsh v. America's Tele-Network Corp.*, 195 F. Supp. 2d 840, 848 (E.D. Tex. 2002); *Elliott*, 867 F.2d at 881(plaintiff must "specify the enterprise"); *Montesano*, 818 F.2d at 427 ("plaintiff must plead specific facts"); *see also Benhamou*, 190 F. Supp.3d at 650 (citing *Old Time Enterprise, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989); *Ocean Energy II v. Alexander &* Alexander, 868 F.2d 740, 748 (5th Cir. 1989) ("enterprise must be more than the summation of predicate acts"); *see also Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 433-34 (5th Cir. 1990), *cert. denied*, 498 U.S. 895 (1990).

enterprise status."[50]  The Supreme Court noted in *Boyle v. United States* that "an enterprise . . . 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"[51]  Here, Vertex offers no factual allegations of the ongoing organization of the foreign workers, nor how the alleged association-in-fact functions.  Vertex must allege how the foreign workers function in order to satisfy the pleading standard for an association-in-fact enterprise.[52]  It does not.  Instead, it simply states that the foreign workers are "a continuing unit that functioned with a common purpose."  Pl.'s Orig. Compl. at ¶ 4.18.  The Supreme Court requires plaintiffs to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[53]

Vertex also fails to allege that the foreign workers have continuity and structure.  The Fifth Circuit has written that associations-in-fact require that "members must function as a continuing unit as shown by *a hierarchical or consensual decision making structure*."[54]  In *Boyle*, the Supreme Court denied that a "chain of command" was necessary, but did state that some form of decision

---

[50]   *Ocean Energy II*, 868 F.2d at 749.

[51]   *Boyle v. U.S.*, 559 U.S. 938, 945 (2009) (quoting *Turkette*, 452 U.S. at 583).

[52]   *Benhamou*, 190 F. Supp.3d at 652 (citing *Old Time Enterprise, Inc.*, 862 F.2d at 1218) ("[P]laintiff must explain the functioning of alleged enterprises to satisfy the pleading standard for the enterprise element.").

[53]   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

making authority is required.[55]  The Court pointed out that "decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc."[56]  Vertex, however, does not allege any mechanism by which the foreign workers function by consensual decision making.

The *Boyle* Court also demanded that an association-in-fact enterprise have three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[57]  Vertex's Complaint offers no factual allegations as to any of these structural features.  Instead, the Complaint only states the alleged purpose (providing foreign workers to TETRA), that the foreign workers have "roles and relationships on the barges," and that the enterprise has longevity in order to pursue the enterprise's purpose.  Pl.'s Orig. Compl. at ¶ 4.18.  Vertex has done no more than merely recite the necessary elements of an association-in-fact.

Because Vertex has failed to plead facts capable of establishing that the alleged association-in-fact enterprise consisting of the foreign workers (1) existed for purposes other than to commit the predicate acts and/or (2) functioned as a continuing unit over time with a decision making structure and (3) had the requisite

---

[54]     *Benhamou*, 190 F.Supp.3d at 652, *cert. denied*, 489 U.S. 1089 (1989) (emphasis added); *see also Plambeck*, 802 F.3d at 673.
[55]     *Boyle*, 559 U.S. at 948.
[56]     *Id.*
[57]     *Id.* at 946.

purpose, relationship, and longevity, the Court should dismiss Vertex's RICO claims based on the absence of an association-in-fact.

**C.    Failure of Conspiracy:  Inadequate pleading defeats Vertex's conspiracy RICO claim.**

Vertex also alleges that TETRA violated 18 U.S.C. § 1962(d):  "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Failing to plead the required elements of a civil RICO claim, as described above, implicitly means Vertex cannot plead a conspiracy to violate § 1962(c).[58]  In addition, Vertex has wholly failed to plead the agreement element of its RICO conspiracy claim.  "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."[59]  Instead, Vertex merely makes the bald assertion that TETRA has violated section 1962(d) "and by reason of their violations, Vertex has been injured in its property."  This fails federal pleading requirements generally and conspiracy requirements specifically.[60]

## V.  CONCLUSION

Because Plaintiff Vertex did not state a claim upon which relief can be granted, the Court should dismiss the suit.

---

[58]    *See Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002).
[59]    *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992).

Respectfully submitted,

*/s/ Jeanie Goodwin*

**Glenn R. Legge**
TBA 12171330
Fed. ID 5420
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone No.:     (713) 917-0888
Facsimile No.:     (713) 953-9470
**ATTORNEY FOR DEFENDANTS
TETRA  TECHNOLOGIES,  INC.  AND
TETRA   APPLIED   TECHNOLOGIES,
LLC**

OF COUNSEL:
**HOLMAN FENWICK WILLAN USA LLP**
Jeanie Tate Goodwin
TBA: 24046949  Fed ID: 592456
Jeanie.Goodwin@hfw.com
Sheshe Taylor Evans
TBA: 24047800  Fed ID: 37745
Sheshe.Evans@hfw.com
Andrew Miller
TBA: 24106309
Andrew.Miller@hfw.com

---

[60]     *See Iqbal*, 556 U.S. at 678; *Tel-Phonic*, 975 F.2d at 1140.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy was served via ECF on this 23rd day of January 2018 to:

Francis I. Spagnoletti
401 Louisiana, 8th Floor
Houston, Texas 77002
Telephone: (713) 653-5600
Facsimile:  (713) 653-5656
Email: fpagnoletti@spaglaw.com

<u>*/s/ Jeanie Goodwin*</u>
Jeanie Goodwin